FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 02 2026

KEVIN P. WEIMER, Clerk
By: Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| TERRI V. LOWE,<br>1136 Joslin Path<br>Douglasville, GA 30134<br><br>Plaintiff, | CIVIL ACTION NO. 1:26-cv-04506-MHC<br>Removed from the Superior Court in Douglas County, Civil Action No. 26cv01471 |
| v. | |
| UNIVERSAL MUSIC GROUP, INC. ("UMGI"); MUSIC ROYALTY CONSULTING, INC., ("MRCI"); PARVIZ OMIDVAR; AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS, ("ASCAP")<br><br>Defendants, | Plaintiff's First Amended Complaint Pursuant to Rule 15(a)(1)(b)<br><br>Verified Complaint<br><br>Contract Law<br><br>JUDGE MARK H. COHEN |

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 15(a)(1)(B)**

---

## I. INTRODUCTION

1. This action arises from a coordinated scheme of contract breach, corporate conversion, and administrative bad faith wherein Defendant Music Royalty Consulting, Inc. (MRCI) and Defendants Universal Music Group, Inc. (UMGI/UMPG)—alongside the American Society of Composers, Authors and Publishers (ASCAP)—systematically exploited a finite, four-song catalog agreement to misroute, siphon, and freeze hundreds of thousands of dollars in royalties belonging to Plaintiff Terri Vanessa Lowe.

2. In August 2018, MRCI purported to purchase a limited royalty stream from four of Plaintiff's songs for $84,000.00—a transaction expressly restricted by written terms and conditions. MRCI failed to pay the full consideration, defaulted on the purchase price, and failed to cure after proper written notice, rendering the agreement lawfully terminated under its own terms in 2019. Furthermore, Defendants utilized corporate instruments executed in the name of Universal-Polygram International Publishing, Inc. (UPIP)—an entity that had been legally dissolved and terminated 18 months prior to the transaction—rendering those foundational structures void.

3. Despite this termination, formal written notice, and Universal's own administrative confirmations acknowledging Plaintiff's direct account ownership and portal access (Vendor ID 2017197, Payee Code 1591), Defendants continued

thcir unlawful collcctions. Payor Dcfcndants UMGI and ASCAP facilitatcd and perpetuated this conversion by sweeping Plaintiff's entire global master catalog, publishing accounts, foreign collection feeds, and independent post-2018 creations (such as *Con Calma* and its remix, arbitrarily mischaracterized as "derivatives") into unauthorized distributions to MRCI through the 2026 distribution cycles.

4. Between 2020 and 2025, Plaintiff navigated an extraordinary series of catastrophic family bereavements, caregiving obligations, and personal injuries that severely impacted continuous legal pursuit: Plaintiff served as primary caregiver for her son during home hospice from June 2020 until his passing in August 2021; cared for her mother through severe mobility loss until her hospitalization and passing in April 2023; managed the passing of her uncle in October 2022, her stepmother of 47 years in January 2023, and her stepfather shortly thereafter; assumed full legal custody and primary caregiving for her young grandson in 2024; suffered severe injuries from an October 2024 automobile accident requiring medical treatment through April 2025 (which necessitated the closure of Lowe Tea Company, LLC); and navigated the sudden critical illness and passing of her brother in November 2024. Despite these profound hardships, Plaintiff renewed formal administrative inquiries with ASCAP and Universal in January 2026 upon stabilizing her affairs, uncovering the ongoing siphoning and portal concealment that directly precipitated this action.

## II. PARTIES

**Plaintiff:**

5. Terri V. Lowe, recording professionally as TLO-Redness, is a songwriter, recording artist, film and music producer, copyright owner, disabled veteran, and retired federal civil servant of the United States Department of Defense, residing in Douglasville, Douglas County, Georgia.

**Defendants:**

6. Music Royalty Consulting, Inc. ("MRCI") is a California corporation with its principal place of business in Beverly Hills, California, operating affiliated entities Royalty Lenders and Hitch Music Publishing. MRCI is joined and charged directly as a substantive corporate Defendant for the contract breaches, short-funding defaults, unlawful post-termination conversions, declaratory relief, and equitable accountings set forth in Counts I, II, IV, and V.

7. Parviz Omidvar is an individual residing in California and is the registered agent, principal, and owner of MRCI, Royalty Lenders, and Hitch Music. Parviz Omidvar is joined and charged directly as an individual Defendant for his active participation, control, and orchestration of the corporate breaches, fraudulent inducements, and statutory conversions set forth in Counts I, II, IV, and V. Publishing, which Omidvar utilizes as MRCI's publishing affiliate within the ASCAP registry.

8. Universal Music Group, Inc. ("UMGI") is an active Delaware stock corporation (California Entity ID #2721235, formed February 7, 2005), with its United States headquarters at 2220 Colorado Avenue, Santa Monica, California 90404. "Universal Music Publishing Group" ("UMPG") is not a registered corporate entity; rather, it is an unregistered internal trade name and publishing division of UMGI. Universal's own public disclosures confirm this integrated structure. On July 26, 2018 — the same month as the IRPA transaction — UMG's corporate website announced David Kokakis's elevation to Chief Counsel of Universal Music Publishing Group, stating he would "work closely with labels at parent company Universal Music Group (UMG)" and would "additionally report to Jeff Harleston, General Counsel and Executive Vice President of Business & Legal Affairs for Universal Music Group worldwide." (Exhibit JJ). UMPG's own Chief Counsel reports to UMGI's General Counsel, confirming that UMPG's legal affairs are under UMGI's direct supervision and control. Accordingly, Defendants Universal Music Group, Inc. and UMPG are joined and charged directly as substantive corporate Defendants for the contract breaches, corporate intake negligence, statutory conversions, declaratory relief, and equitable accountings set forth in Counts II, IV, and V.

9. This is confirmed by California Secretary of State records (Exhibit D) returning zero corporate registrations for that name, by official corporate disclosures on

UMG's wcbsitc—whcrc clicking through thc corporatc organizational map undcr Universal Music Group USA explicitly displays UMPG as an internal subsidiary/division—and by official royalty communications issued directly from UMGI's @umusic.com corporate domain. Universal-Polygram International Publishing, Inc. ("UPIP"), Entity ID #1628253, is a legally terminated and inactive Delaware corporation whose California inactive date is February 28, 2017, (Exhibit TT) and which improperly appears on MRCI's 2018 assignment instruments as a purported contracting payor. Defendants Universal Music Group, Inc. and UMPG are joined and charged directly as substantive corporate Defendants for the contract breaches, corporate intake negligence, statutory conversions, declaratory relief, and equitable accountings set forth in Counts II, IV, and V.

10. The American Society of Composers, Authors and Publishers ("ASCAP") is a membership-owned unincorporated performing rights organization maintaining operational offices in New York, Los Angeles, Nashville, and Atlanta, Georgia, through which the writer and publisher accounts at issue in this action are administered. Although previously referenced in preliminary procedural filings as a nominal or stakeholder entity, ASCAP is formally joined herein as a full-fledged, substantive Defendant. ASCAP is joined and charged directly for the declaratory, injunctive, and damages relief sought in Counts III, IV and  based on its active

participation in administrativc misrouting, unauthorizcd distribution holds, and conversion.

## III. JURISDICTION & VENUE

### Subject-Matter Jurisdiction

11. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff and all Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, with documented diverted royalties exceeding $682,000.00.

12. This action was removed from the Superior Court of Douglas County, Georgia, by Defendants on August 10, 2026, pursuant to 28 U.S.C. § 1441. Supplemental jurisdiction over related state-law claims is proper under 28 U.S.C. § 1367.

### Personal Jurisdiction

13. This Court has personal jurisdiction over each Defendant pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and Georgia's Long-Arm Statute (O.C.G.A. § 9-10-91(1) and (3)), because each Defendant transacted business within this State, directed continuous commercial activities and administrative routing into this District, and the causes of action arise directly from those contacts.

14. Defendant Music Royalty Consulting, Inc. ("MRCI") and its principal, Parviz Omidvar: Defendant Music Royalty Consulting, Inc. ("MRCI") and its principal,

Parviz Omidvar, purposcfully dirccted thc 2018 transaction into Douglas County, Georgia, by transmitting contract instruments to Plaintiff for execution, soliciting a long-term commercial relationship, negotiating terms with Georgia stakeholders (including co-owner Shawn Moltke), and maintaining continuous commercial communications into Douglasville before, during, and after closing. Furthermore, MRCI's business operations and catalog transactions purposefully targeted and directed effects toward individuals and related entities residing within the State of Georgia. MRCI negotiated transaction terms on August 18, 2018 (Exhibit U) and structured performance conditions in August 2018 (Exhibit FF). Pursuant to MRCI's requests for promotional and administrative due-outs (Exhibit FF), Plaintiff transmitted marketing materials on September 9, 2018, which Parviz promptly acknowledged and engaged with (Exhibit GG). As established by Universal's integrated administrative records which map related catalog codes like Payee Code 0680 directly to Shawn Moltke (Exhibit DD)—MRCI's dealings were deeply intertwined with assets and creators anchored in this forum. Moreover, Parviz actively reached out in October 2018 specifically inquiring about MC Shan with the intent to conduct further business operations directly within the State of Georgia (Exhibit GG), establishing continuous and minimum contacts with this forum. Furthermore, Defendant Parviz Omidvar purposefully expanded the commercial nexus by actively soliciting ongoing business relationships beyond the

scopc of thc 2018 catalog agrccmcnt—rcpcatcdly inquiring about and attcmpting to negotiate separate ventures involving Georgia stakeholders and artists such as Shawn Moltke and MC Shan during and immediately following the closing window (Exhibit W, Exhibit X, Exhibit GG).

15. Defendant Universal Music Group, Inc. ("UMGI/UMPG")

Defendant Universal Music Group, Inc. ("UMGI/UMPG") purposefully avails itself of this forum through direct commercial operations in Georgia—maintaining an urban music division office in Atlanta and a publishing contact office at 400 Interstate North Pkwy SE—while issuing ACH remittances as Georgia-registered Vendor ID 2017197, administering Payee Code #1591, and misrouting royalty streams that caused direct injury in this District. Universal is subject to personal jurisdiction because it maintains continuous and systematic administrative ties to the forum state by directly processing, mapping, and routing royalty distributions for Georgia-based entities and residents—such as Shawn Moltke in Douglasville, Georgia (Payee Code 0680)—within its centralized database, as evidenced by Universal's internal royalty and accounting records (Exhibit DD). These ongoing business operations connect Universal's corporate infrastructure directly to the forum, making the exercise of jurisdiction entirely proper.

16. Defendant ASCAP maintains continuous business operations within this District through its local contact office at 950 Joseph E. Lowery Blvd. NW,

Atlanta, GA, whcrc Writcr Account #1547789 and Publishcr Account #31985—thc specific accounts whose routing is at issue—are administered. Because the active management, administration, and improper routing of these specific local accounts are tied directly to ASCAP's physical operations and regional touchpoints within this judicial district, personal jurisdiction over ASCAP is fully secured under Georgia's Long-Statute and federal due process standards.

**Venue and Joinder**

17. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, contract negotiations, electronic solicitations, and financial interdictions giving rise to these claims occurred directly within this District, where Plaintiff resides and where the affected accounts are administered.

18. Enforcing ASCAP's New York forum-selection provision in this multi-defendant routing dispute would fracture a single controversy and risk inconsistent rulings. ASCAP and UMGI are necessary parties under Federal Rule of Civil Procedure 19(a) to ensure complete, unified relief in this proper forum.

## IV. CAUSES OF ACTION

26. Plaintiff brings this action to redress ongoing financial, contractual, and administrative violations committed by Defendants across domestic and international royalty pipelines, set forth across the following counts:

(1) Breach of Contract and Declaratory Relief (MRCI): For failing to satisfy the express $84,000.00 condition precedent within the mandatory one-month window, defaulting on the purchase price, and continuing to collect royalties after the agreement was lawfully terminated under IRPA Section 3(c).

(2) Statutory Conversion and Void Instruments (MRCI, UMGI/UMPG, and Omidvar): For exercising unauthorized control over Plaintiff's catalog using instruments executed through Universal-Polygram International Publishing, Inc. (UPIP)—an entity legally dissolved 18 months prior—in violation of Cal. Corp. Code § 2010 and O.C.G.A. § 14-2-1405.

(3) Administrative Gross Negligence (ASCAP): For maintaining unauthorized routing of Writer Account #1547789 and Publisher Account #31985 based on an unconsummated, unfunded loan assignment.

(4) Equitable Accounting and Disgorgement (All Defendants): For concealing contracts and locking Plaintiff out of administrative portals, necessitating a complete disgorgement of diverted funds exceeding $682,000.00.

(5) Permanent Injunctive Relief (All Defendants): To restore Plaintiff's direct administrative control over Master Account #5137148025, Payee Code #1591, ASCAP accounts, and foreign PRO feeds.

(6) Brcach of Contract and Intakc Ncgligcncc (UMG/UMPG): For violating non-delegable intake vetting duties by accepting an unverified IRPA executed through the dissolved UPIP entity while failing to provide modern post-merger split terms.

## V. FACTUAL ALLEGATIONS

### A. Nature of the Action, Forum Integrity, and the 2018 Transaction

72. This action arises from multiple, interconnected contract violations, breaches of administrative duty involving domestic and international royalty pipelines, and ongoing procedural manipulation by Defendants. Specifically, following the removal of this action from the Superior Court of Douglas County to this federal forum, Defendants improperly altered the civil cover sheet designation from contract law to property (Exhibit A, Exhibit B) and intentionally omitted key evidentiary exhibits (including Exhibits BB and CCC detailing ASCAP Writer Account #1547789 and Publisher Account #31985 records) from the removal record (Doc. 1-2)—mirroring the systematic document concealment, portal lockouts, and financial siphoning that form the substantive core of this lawsuit.

73. On August 2, 2018, Plaintiff Terri V. Lowe and Defendant Music Royalty Consulting, Inc. ("MRCI"), through Parviz Omidvar, negotiated a limited catalog transaction governed by an Irrevocable Royalty Purchase Agreement ("IRPA") (Exhibit I) for the sale of royalty income from four specific musical works for

$84,000.00. Defendant MRCI withheld and concealed the fully countersigned agreement from Plaintiff until it was produced in litigation in April 2021. Furthermore, Defendant MRCI conditioned the release of any countersigned copy upon Plaintiff executing a Confirmation of Consideration certifying receipt of the full $84,000.00, despite knowing the transaction was short-funded.

74. The IRPA established an express condition precedent requiring Defendant MRCI to tender the full $84,000.00 purchase price within one month of execution (Exhibit I). Ten days prior to closing, on August 18, 2018, MRCI instructed Plaintiff via email to manually alter contract terms to reflect the full $84,000 baseline while attempting to capture pre-contract payments and prematurely withdraw funds (Exhibit V). Furthermore, Defendant MRCI conditioned the release of any countersigned copy of the IRPA upon Plaintiff executing a Confirmation of Consideration and satisfying additional promotional and administrative due-outs, as explicitly demanded by MRCI (Exhibit X), despite knowing the transaction was short-funded.

75. MRCI failed to satisfy the condition precedent. On August 2, 2018—weeks before MRCI executed the IRPA—Universal Music Group's Royalty Window executed an unauthorized pre-closing advance drawdown request of $878.00 under Reference Transaction ID US201170 against Plaintiff's Master Account #5137148025 and Payee Code #1591 (Exhibit KK). Subsequently, on August 23,

2018—a day before MRCI executed the IRPA—Universal's Royalty Window processed an advance drawdown of $878.00 under Invoice No. ROY11331 against Plaintiff's existing positive royalty balance of $955.01 (Exhibit E and Exhibit H). MRCI's closing check on August 24, 2018, totaled only $83,122.00 (Exhibit F), and MRCI improperly claimed the $878.00 drawn from Plaintiff's own account as part of its purchase consideration, resulting in an uncorrected short-funding default of $1,756.00 (Exhibit V)—while Universal's customer service and finance departments simultaneously subjected Plaintiff to months of protracted demands for W-9 forms, voided checks, and name-alias reconciliations (Terri Donald, Terri Strickland, Terri Tucker) to process that residual advance (Exhibit S)

76. In late 2018, Plaintiff actively challenged the transaction's scope and demanded that Universal's legal department review the documents submitted by Mr. Parviz to verify that the paperwork matched what was actually agreed upon (Exhibit T). Subsequently, on May 17, 2019, MRCI's principal acknowledged in writing that payment was incomplete (Exhibit CC). Plaintiff issued timely written notices of underpayment and default in October 2019 (Exhibit G) and June 2020 (Exhibit H) transmitted via USPS and FedEx. Because MRCI failed to correct or cure the financial shortfall within the mandatory five-day cure window under IRPA Section 3(c) (Exhibit I), Plaintiff lawfully terminated, rescinded, and revoked the IRPA in writing.

77. Concurrcntly with thc IRPA, MRCI causcd Plaintiff to cxccutc prc-closing assignment instruments pursuant to IRPA Sections 4(a) and 4(c) (Exhibit I). Without confirming or consulting with Plaintiff, these instruments listed Universal-Polygram International Publishing, Inc. ("UPIP") as payor. UPIP was legally dissolved and inactive as of February 28, 2017—eighteen months prior to the transaction (Exhibit TT). Under California Corporations Code § 2010 and O.C.G.A. § 14-2-1405, a dissolved corporation lacks capacity to contract, execute assignments, or receive forward-looking assets.

78. Furthermore, Defendant MRCI had Plaintiff execute an ASCAP Loan Application Assignment for Writer Account #1547789 designating an unconsummated $400,000.00 loan structure (Exhibit J). No such loan was ever funded, disbursed, or substantiated by MRCI.

79. Following the recovery of the countersigned IRPA in April 2021, Plaintiff provided formal written notice of contract termination, underpayment, and default to all Defendants (MRCI, UMG/UMPG, and ASCAP) in 2020 and 2021 via U.S.P.S., Fed-Ex and email. (Exhibit G, Exhibit H, Exhibit HH). When Plaintiff finally compelled access to the UMPG Royalty Window portal in March 2026, UMPG Senior Vice President Iwona Wyrzykowska formally confirmed that no third party held independent administrative authority over Plaintiff's account. Despite this and receiving explicit notice that the transaction had failed of

consideration and been lawfully terminated, Defendants refused to honor contractual boundaries, continuing to divert hundreds of thousands of dollars in royalties through unauthorized container codes like Payee Code #1591 and unverified loan routing.

80. Defendant ASCAP's administration of the unconsummated loan instrument remained active through subsequent years until revealed through 2026 administrative disclosures. Specifically, in August 2026 correspondence, ASCAP Senior Vice President of Legal Richard Reimer confirmed that ASCAP had continuously routed royalties from Plaintiff's writer account based upon this unverified loan application document (Exhibit UU), despite Schedule A requiring attached loan documentation and actual funding proof that ASCAP never verified or received. Furthermore, Plaintiff formally notified Universal Music Publishing Group executives—including Senior VP Iwona Wyrzykowska—reaffirming that the MRCI/Hitch administration agreement was terminated effective April 26, 2021, and demanding a comprehensive routing audit, ledger, and accounting restoration for Account #1591 and all unassigned or post-2018 works like *Con Calma*. (Exhibit LL).

**B. Concealment of Documents and Prior Litigation Context**

81.Defendant MRCI intentionally concealed the fully countersigned copy of the IRPA from Plaintiff from August 2018 through April 20, 2021 (Exhibit I),

rcsponding to transparcncy dcmands by producing only subordinatc loan assignment paperwork while withholding the master contract. As established by the sworn declaration of MRCI attorney Jonathan F. Karmo in the Central District of California (*Tervanjay Films, Inc. v. Music Royalty Consulting, Inc.*, Case No. 2:20-cv-06702-JFW-ADS, Doc. 92-1), the countersigned IRPA bearing the court filing ticker was produced for the first time only when filed as a court exhibit in April 2021. (Exhibit VV)

82. The prior California litigation was strictly a civil RICO and common-law fraudulent inducement action evaluated under the procedural pleading sufficiency standards of Federal Rules of Civil Procedure 8 and 9. That prior action did not adjudicate state-law contract formation, did not evaluate the legal capacity or legality of the contract regarding defunct or dissolved payor entities, and did not evaluate whether MRCI satisfied the mandatory $84,000.00 purchase price terms under IRPA Section 3(c).

83. Plaintiff's pursuit of legal remedies was subject to equitable tolling and unavoidable delay between 2020 and 2025 due to an extraordinary accumulation of catastrophic family bereavements, intensive caregiving duties, and severe personal injuries. Specifically, Plaintiff served as primary caregiver for her son during home hospice from June 2020 until his passing in August 2021; cared for her mother through severe mobility loss until her hospitalization and passing in April 2023;

navigated the passing of her uncle in October 2022, her stepmother of 47 years in January 2023, and her stepfather shortly thereafter; assumed full legal custody and primary caregiving for her young grandson in 2024; suffered debilitating injuries from an October 2024 automobile accident requiring continuous medical treatment through April 2025 (which forced the closure of Lowe Tea Company, LLC); and navigated the sudden critical illness and passing of her brother in November 2024. These extraordinary circumstances, combined with Defendants' active concealment of accounting records and portal lockouts, prevented earlier discovery and formal assertion of these claims until Plaintiff stabilized her affairs and resumed direct administrative inquiries with ASCAP and Universal in January 2026.

84. Furthermore, that prior CDCA 2022 proceeding did not review or rule upon contract termination and unfulfilled conditions precedent, did not audit Universal Master Account No. 5137148025 or Payee Code 1591, did not adjudicate the separate 2018 ASCAP loan application assignment, and did not involve ASCAP or UMGI as parties.

**C. Notice, Termination, Scope, and Pipeline Routing**

85. The claims and legal theories asserted in this action arise from entirely distinct transactional events, subsequent breaches, and statutory violations that were neither part of nor adjudicated within the prior California proceeding. Specifically, the prior action was strictly limited to evaluating the pleading sufficiency of a

federal civil RICO and common-law fraud claim under Rule 9(b) regarding a pre-litigation email exchange.

86. By contrast, the instant action asserts independent state-law contract termination, unfulfilled conditions precedent under Section 3(c), corporate capacity defects of dissolved payors (such as UPIP under Exhibit TT), and ongoing post-litigation conversions through unauthorized conduits (Universal Master Account No. 5137148025, Payee Code 1591, and unverified ASCAP loan routing) involving new parties (UMGI/UMPG and ASCAP) who were entirely absent from the prior lawsuit.

87. In response to Plaintiff's notices, ASCAP Senior Vice President of Legal Richard Reimer acknowledged receipt of communications regarding the unconsummated loan structure on Writer Account #1547789, confirming that ASCAP had maintained a hold on writer royalties due to the parties' ongoing disputes. Despite these repeated notices that the $400,000 loan instrument was never funded or performed—culminating in August 2026 legal disclosures confirming continued routing—ASCAP subsequently moved to release and distribute those withheld funds to MRCI without verifying loan consideration or contract compliance (Exhibit MM, Exhibit UU).

88. On March 20, 2019, ASCAP updatcd its rccords to rcflcct a strictly limitcd scope for the third-party assignment to Hitch Music (*Chori Chori*, *ICRA MI*, *Informer*, *Legalize It*, and *Warning*) (Exhibit BB, Exhibit RR).

89. On March 21, 2019, MRCI principal Parviz Omidvar confirmed in writing to UMPG that any new songs written by Plaintiff in the future would not be included in the Universal account sold to MRCI (Exhibit BB, Exhibit RR), corroborating that post-2018 works (such as *Con Calma*) and unlisted catalog items were excluded.

90. During a March 13, 2019 conference call, ASCAP similarly acknowledged that MRCI's assignment was restricted to specific targeted works rather than a wholesale catalog transfer (Exhibit SS).

91. Despite these explicit scope limitations, payor UMG/UMPG processed payments under unverified name variations (Terri Tucker versus established tax records under Terri Donald and Terri Strickland) and misrouted master catalog assets, acting as if UMPG transferred control of Master Account No. 5137148025—along with associated client/feeder codes (TFEP4Y, EP4Y, B75T, B75U) and foreign CMO income feeds (SOCAN, APRA/AMCOS, ZAMP)—to MRCI without contractual authority (Exhibit AA, Exhibit CC).

92. MRCI obtained provisional portal access by utilizing confidential account credentials provided by Plaintiff in August 2018 (Exhibit Y). Defendants

subscqucntly cxploitcd UMPG's domcstic-only portal architccturc (anchorcd by Payee Code #1591)—which utilized a misleading "USA Only" geographic heat map and interface (Exhibits L, QQ) that flattened and concealed international territories to falsely simulate near-zero foreign activity—in order to mask, obscure, and divert massive global earnings generated by multi-platinum international works like Con Calma (which achieved over 41x Platinum equivalents outside the U.S.) (Exhibit M).

93. Furthermore, payors funneled royalties from Plaintiff's distinct ASCAP Publisher Account Member ID #31985 (Red Hot Redness)—which appeared on no assignment or the IRPA—into the Universal/MRCI pipeline under defunct corporate names (Exhibits I, J). Centralized accounts payable communications from UMG personnel via UNIPORT.HELPDESK.US@umusic.com and UMG.APCONTROL.USA@UMUSIC.COM confirm that UMGI and UMPG share an integrated administrative infrastructure governing these ongoing financial diversions, which have persisted continuously through the 2026 distribution cycles (Exhibits AA, AB).

**D. The Loan Application vs. Actual Deal Structure**

91. The pre-closing transaction instruments included an ASCAP Writer Account Loan Application Assignment for Member ID #1547789 designating an unconsummated $400,000.00 loan structure (Exhibit J). This loan was never

funded, never disbursed, and never transacted upon any works listed in the IRPA. In February 2019, ASCAP was formally notified that the loan application assignment was invalid and that no loan had been executed or funded. Despite this notice and ASCAP Global Member Services' August 2018 records indicating the assignment was merely tied to an advance repayment (Exhibit EE), ASCAP continued unauthorized routing.

92. MRCI obtained provisional portal access by utilizing confidential account credentials provided by Plaintiff in August 2018 (Exhibit Y). Defendants subsequently exploited UMPG's domestic-only portal architecture—anchored by the UMPG Window and UMG Royalty Portal interfaces (**Exhibit WW**) which utilized a misleading "USA Only" geographic heat map and interface (Exhibits L, QQ) that flattened and concealed international territories to falsely simulate near-zero foreign activity—in order to mask, obscure, and divert massive global earnings generated by multi-platinum international works like *Con Calma* (which achieved over 41x Platinum equivalents outside the U.S.) (Exhibit M).

93. Following written confrontation in May 2019 regarding unfulfilled payment shortfalls and the missing advance payment under Invoice No. ROY11331 (Exhibit CC), Plaintiff provided notice of non-payment. Because Defendants failed to cure the deficiency within the contractual window, Plaintiff exercised her contractual

right to terminate the agreement, while Defendants continued to withhold copies of the fully executed IRPA.

**E. Master Account Siphoning, Corporate Inactivity, and Portal Abuses**

94. Universal-Polygram International Publishing, Inc. ("UPIP")—which originally served as Plaintiff's historical contracting counterparty under foundational publishing agreements (Exhibit K)—was legally dissolved and inactive as of February 28, 2017 (Exhibit TT). Consequently, when improperly named as a payor on 2018 pre-closing instruments, this dissolved entity possessed no legal capacity to contract, execute assignments, or receive forward-looking asset assignments. Furthermore, Plaintiff formally notified UMPG administration executives—including Shawn Odle and Anthony Saragueta—putting them on direct notice that MRCI had exploited unverified name variations (such as "Terri Tucker") to improperly capture Account #1591 while omitting Plaintiff's true legal names (Terri Donald / Terri Strickland) and underlying PolyGram publishing agreements. Despite acknowledging receipt and promising a review with Business Affairs, Universal administration failed to correct the routing or verify the underlying credentials (Exhibit NN)

**95.** Universal Music Publishing Group ("UMPG") operates solely as an internal unincorporated trade name of Universal Music Group, Inc. ("UMGI"), with UMGI and UMPG sharing unified corporate headquarters, executive leadership, and

integrated accounting systems, as visually and structurally confirmed by Universal's official corporate organizational map and company information disclosures (Exhibit N).

96. Pre-existing client codes (EP4Y, B75T, B75U, 1591) belonged exclusively to Plaintiff prior to the August 2018 transaction. Prior to the August 2018 transaction, Plaintiff independently established and maintained active accounts, Payment and Information Processing System (PIPS) credentials, and unique client codes directly with Universal (Exhibit C), proving that these administrative structures existed independently of and predated the limited four-song catalog agreement with MRCI. Without contractual authorization, Defendants disseminated Master Account No. 5137148025, associated client codes, and embedded multi-territory foreign PRO/CMO income feeds (APRA/AMCOS, KODA, SOCAN, ZAMP) to MRCI.

97. UMPG blocked Plaintiff's access to the UMPG Royalty Window and exploited a domestic-only portal architecture with a misleading "USA Only" heat map to mask global earnings exceeding $550,000.

98. Although March 2026 UMPG disclosures confirmed Plaintiff's portal access (Vendor ID 2017197) and acknowledged that post-2018 works like Con Calma were created long after the cutoff, Universal improperly subjected these independent creations to the legacy MRCI assignment as "derivatives". (Exhibit II)

99. Payors swept funds from Plaintiff's unlisted ASCAP Publisher Account #31985 (Red Hot Redness) into Payee Code #1591—an internal accounts-payable statement container carrying no authority to collect PRO funds outside a valid contract.

**F. ASCAP's Administrative Negligence and Scope of Prior Rulings**

100. Defendant ASCAP maintained unauthorized routing for Writer Account Member ID #1547789 based on an unconsummated loan agreement and assignment that was never funded or disbursed, continuing these distributions despite direct written and recorded notice that the underlying loan and IRPA transactions had failed of consideration and been lawfully terminated under Section 3(c).

101. The prior Central District of California action (Tervanjay Films, Inc. v. Music Royalty Consulting, Inc., Case No. 2:20-cv-06702-JFW-ADS) does not bar this proceeding. That action was strictly limited by Magistrate Judge Spaeth's Report and Recommendation to diversity jurisdiction and fraudulent inducement regarding the IRPA's execution, culminating in Judge Walter's April 20, 2022, Order dismissing the Fifth Amended Complaint. (Exhibit VV)

102. Because MRCI withheld the countersigned IRPA until April 2021, Plaintiff could not litigate the IRPA Section 3(c) termination in that proceeding. Furthermore, the 2022 Order did not adjudicate contract performance, the $84,000

condition prcccdcnt shortfall, thc UPIP corporatc dissolution, unassociatcd forcign PRO feeds, master account routing, or the validity of the separate 2018 ASCAP loan assignment.

103. Because neither ASCAP nor UMGI was a party to that action, the present claims—arising from post-termination conversion and unverified routing through 2026—are entirely distinct and unadjudicated.

**G. Financial Architecture, Account Structure, and Catalog Breakout**

104. Personal Writer Account (ASCAP Member ID #1547789 / IPI #338188048) represents Plaintiff's personal songwriter membership. (Exhibit O)

105. MRCI and ASCAP cross-routed royalties from Plaintiff's writer account based on an unconsummated 2018 loan application assignment, resulting in collections by MRCI exceeding $91,596.94, including $66,808.88 documented through ASCAP legal disclosures.

106. Publishing Account and Third-Party Collection (ASCAP Publisher Account #31985 / IPI #338188048) is registered under Red Hot Red'ness for publishing rights. (Exhibit P)

107. Universal-Polygram International Publishing, Inc.—operating under Member ID #10447 and IPI #343892736—appears on statements as "Collected By Others," intercepting performance and mechanical royalties into the Universal/MRCI pipeline.

108. Master Account No. 5137148025 and Omnibus Container Routing encompasses Universal Master Account No. 5137148025, Vendor ID 2017197, and Statement Payee Code #1591.

109. Rather than utilizing legitimate, artist-specific distribution channels (Account #0680), Defendants bypassed true channels to funnel master catalog receipts, standalone client codes (EP4Y, B75T, B75U), and embedded multi-territory income feeds (APRA/AMCOS, ZAMP, KODA, SAYCO) into Payee Code #1591 (Exhibit PP), listed in the Foreign PRO are Plaintiffs accounts and names (Exhibit QQ)

110. Forensic Accounting and Diverted Totals demonstrate that Defendants exploited the UMPG Royalty Window portal's strict "USA Only" reporting parameters—hidden behind portal limits throughout the prior California proceedings and ascertained via 2026 forensic records—to obscure worldwide collections exceeding $550,000.(Exhibit Q)

111. This diversion resulted in $66,677.67 in direct payments to MRCI out of diverted pipeline receipts exceeding $604,625.09 of $682,869.73 total processed, constituting active statutory conversion.

## VI. CLAIMS AND COUNTS I THROUGH VI

### COUNT I

**Breach of Contract, Non-Formation, Unlawful Diversion, Statutory Conversion, Equitable Rescission, Declaratory Relief, and Statutory Bad-Faith Damages Under O.C.G.A. §§ 13-6-11, 51-13-1 et seq., and Common-Law Contract Doctrines**

*(Against Defendant Music Royalty Consulting, Inc. — Failure of Consideration, Unfulfilled Conditions Precedent, and Post-Termination Conversion)*

112. Plaintiff realleges and incorporates by reference the factual allegations set forth in Paragraphs 72 through 79 (contract execution and short-funding) and Paragraphs 87 through 93 (notices, termination, scope, and pipeline routing) as if fully set forth herein.

113. This claim is brought pursuant to contract-law doctrines of failure of consideration, unfulfilled conditions precedent, non-formation, contractual rescission, statutory conversion under O.C.G.A. § 51-13-1 et seq., and statutory litigation expenses and bad-faith damages under O.C.G.A. § 13-6-11.

114. Defendant MRCI breached the 2018 IRPA by failing to satisfy the mandatory condition precedent of paying the full $84,000.00 purchase price within one month, resulting in an uncorrected short-funding default of

$1,756.00 (inclusive of the unauthorized $878.00 pre-closing drawdown under Invoice No. ROY11331) (Exhibits E, F, H, I).

115. Contemporaneous August 18, 2018 instructions from MRCI confirming that transaction amounts were to be unencumbered by fee deductions—coupled with attempts to capture pre-contract payments weeks before closing—demonstrate MRCI's premature and bad-faith diversion scheme (Exhibits U, PP).

116. Following written notices of default and MRCI's May 17, 2019 written acknowledgment that payment was incomplete, MRCI failed to cure within the mandatory five-day window under IRPA Section 3(c). Consequently, the IRPA was lawfully terminated, rescinded, and revoked by Plaintiff in writing (Exhibits G, H, HH, J).

117. Following this valid termination, MRCI's continued collection, siphoning, and retention of royalties constitute continuous active conversion, unlawful diversion under O.C.G.A. § 51-13-1 et seq., and wrongful dominion over property years after the agreement was lawfully terminated.

118. As a direct and proximate result of MRCI's breaches and unlawful post-termination conversion, Plaintiff has suffered substantial financial damages. Plaintiff seeks contractual rescission, return of administrative control, pre- and post-judgment interest, litigation expenses and statutory bad-faith damages

under O.C.G.A. § 13-6-11, a declaratory judgment establishing the nullity of the IRPA, and full restitution and disgorgement co-extensive with: *(a)* The uncompleted purchase consideration (including the $83,122.00 net payout balance) (Exhibit F) and $878.00 pre-contract payment (Exhibit E); *(b)* Wrongful collections from ASCAP Writer Account #1547789 and Publisher Account #31985 in excess of $91,596.94 (including $66,808.88 documented through ASCAP disclosures); and *(c)* Diverted pipeline receipts exceeding $604,625.09 of $682,869.73 processed under Universal Master Account No. 5137148025 (including $66,677.67 in known direct payments to MRCI).

## COUNT II

**Wrongful Dominion, Statutory Conversion, Breach of Administrative Duty, Fiduciary Accountability, Breach of Contract, And Invalidity of Instruments Executed by Dissolved Entities Under O.C.G.A. §§ 51-13-1 et seq., 10-6-1 et seq., 14-2-1405, 14-2-1408, and California Corporations Code § 2010**

*(Against Defendants Universal Music Group, Inc., UMPG, and Music Royalty Consulting, Inc. — Master Account No. 5137148025, Publisher Account No. 31985, and Writer Account Member ID #1547789)*

119. Plaintiff realleges and incorporates by reference the factual allegations set forth in Paragraphs 94 through 99 (corporate dissolution, UMGI/UMPG corporate

unity, clicnt codcs, portal hcat maps, and mastcr account siphoning) as if fully sct forth herein.

120. This claim is brought pursuant to corporate capacity and dissolution statutes (Cal. Corp. Code § 2010; O.C.G.A. §§ 14-2-1405, 14-2-1408), statutory conversion (O.C.G.A. § 51-13-1 et seq.), agency and fiduciary accountability (O.C.G.A. § 10-6-1 et seq.), common-law contract duties, the implied covenant of good faith and fair dealing, corporate intake negligence, and statutory bad-faith damages under O.C.G.A. § 13-6-11.

121. Universal-Polygram International Publishing, Inc. ("UPIP")—the payor entity named on pre-closing instruments—was legally dissolved and inactive as of February 28, 2017 (Exhibit TT), rendering all instruments executed in its name void ab initio under California and Georgia law, as a dissolved corporation possesses no capacity to contract, assign, or administer forward-looking assets. As master corporate administrators, Defendants UMG and UMPG owed a non-delegable duty of proper corporate intake vetting, strict compliance review, and fair administration of the IRPA (Exhibit D, Exhibit I) Furthermore, UMPG operates solely as an internal unincorporated division of Universal Music Group, Inc. ("UMGI"), making UMGI directly and jointly liable for all administrative routing and container abuse.

122. Dcfcndants brcachcd thcsc contractual and administrativc dutics, thc implicd covenant of good faith and fair dealing, and their non-delegable intake obligations by: *(a)* Accepting and enforcing a defective 2018 IRPA executed through a legally dissolved corporate entity (UPIP, which ceased to exist via Delaware corporate merger on February 24, 2017) (Exhibit TT); *(b)* Failing to execute a transparent post-merger agreement reflecting established catalog value; and *(c)* Diverting and siphoning royalties through unauthorized container routing channels (Payee Code #1591 under Master Account No. 5137148025) rather than legitimate artist-specific channels, illegally sweeping standalone client codes (EP4Y, B75T, B75U) and foreign income feeds into an omnibus container—further exploiting a deceptive "USA Only" portal interface and color-coded geographic map (Exhibit L) which falsely simulates zero sales while concealing massive global earnings generated by multi-platinum works like Con Calma, persisting continuously through the 2026 distribution cycles.

123. Defendants' knowing enforcement of instruments from a dissolved corporate entity, coupled with the active concealment of true catalog structures through opaque reporting statements bearing legacy names, constitutes unlawful diversion and active statutory conversion under O.C.G.A. § 51-13-1 et seq.

124. As a direct and proximate result of Defendants' unlawful dominion, conversion, breaches of contract, and intake negligence, Plaintiff has suffered

substantial financial damagcs. Plaintiff sccks: *(a)* A judicial dctcrmination invalidating all UPIP-referenced assignments; *(b)* Joint and several full restitution and disgorgement of all wrongfully diverted revenues co-extensive with UMG Master Account No. 5137148025 (pipeline receipts exceeding $604,625.09), Payee Code #1591, and Writer/Publisher Accounts; *(c)* Pre- and post-judgment interest; *(d)* Litigation expenses and statutory bad-faith damages pursuant to O.C.G.A. § 13-6-11; and *(e)* Damages for ongoing post-termination conversion through the 2026 distribution cycles.

## <u>COUNT III</u>

**Gross Negligence, Administrative Willful Blindness, and Breach of Fiduciary and Administrative Duty Under Common-Law Tort, Equity, and O.C.G.A. §§ 51-1-2 and 10-6-1**

*(Against Defendant ASCAP — Unauthorized Routing on Unconsummated Loan Assignment, Writer Account Member ID #1547789, and Publisher Account Member ID #31985)*

125. Plaintiff realleges and incorporates by reference the factual allegations set forth in Paragraphs 91 through 93 (unfunded loan assignment and ASCAP compliance records) and Paragraphs 100 through 103 (ASCAP's continued routing and scope rulings) as if fully set forth herein.

126. This claim is brought pursuant to common-law gross ncgligcncc undcr O.C.G.A. § 51-1-2, fiduciary accountability statutes under O.C.G.A. § 10-6-1, ASCAP Compendium regulations governing loan assignments, and equitable duties requiring performing rights organizations to safeguard member accounts against unverified third-party routing directives. (Exhibit OO)

127. Defendant ASCAP breached these non-delegable duties by maintaining continuous unauthorized routing of Writer Account Member ID #1547789 based on an unconsummated $400,000.00 loan application assignment that was never funded or disbursed (Exhibit J), and by accepting collections from an inactive entity (Universal-Polygram International Publishing, Inc.) against Publisher Account Member ID #31985 (Red Hot Red'ness)—an account appearing on no valid assignment or the IRPA—allowing those funds to be swept into the Universal/MRCI pipeline.

128. Despite receiving formal written notice in February 2019 that the loan was unfunded, confirming the limited four-song scope of the IRPA in March 2019 (Exhibits EE, SS), receiving copies of the controlling master IRPA, and receiving explicit notices of contract termination, ASCAP willfully continued routing Plaintiff's funds to MRCI and improperly exploited temporary litigation standstill holds to permanently divert post-2022 distribution cycles without verifying contract compliance.

129. As a dircct and proximatc rcsult of ASCAP's gross ncgligcncc, willful blindness, and breach of administrative duty, Plaintiff seeks: (a) Full damages for wrongful collections routed from Writer Account Member ID #1547789 exceeding $91,596.94 (including $66,808.88 documented through ASCAP legal disclosures); (b) Full damages for wrongful collections swept from Publisher Account Member ID #31985; (c) Injunctive relief directing ASCAP to immediately cease all unauthorized routing; (d) Statutory pre- and post-judgment interest; and (e) Damages for ongoing administrative breaches persisting through the 2026 distribution cycles.

## COUNT IV

**Declaratory Judgment Under 28 U.S.C. §§ 2201–2202, Contract Doctrines, Administrative Law, and Conversion**

*(Against All Defendants — Account Ownership, Contract Termination, Loan Validity, and Payee Validation)*

130. Plaintiff realleges and incorporates by reference the factual allegations set forth in Paragraphs 72 through 79 (contract execution and short-funding), Paragraphs 91 through 94 (UPIP dissolution and loan status), Paragraphs 95 through 96 and 100 through 103 (ASCAP routing and prior rulings), and Paragraphs 104 through 111 (financial architecture and account breakdowns) as if fully set forth herein.

131. An active, justiciable controversy exists between Plaintiff and Defendants concerning: *(a)* The legal enforceability and lawful termination of the 2018 IRPA under Section 3(c) due to MRCI's unfulfilled condition precedent of paying the full $84,000.00 purchase price, resulting in an uncorrected short-funding default of $1,756.00 (inclusive of the unauthorized $878.00 pre-closing advance deduction under Invoice No. ROY11331) and a total failure of consideration; *(b)* The legal capacity and validity of pre-closing instruments executed in the name of Universal-Polygram International Publishing, Inc., an entity dissolved in February 2017 (Exhibit TT); *(c)* The funding status and enforceability of the unconsummated 2018 ASCAP loan application assignment (Exhibit J); *(d)* The true legal scope of Statement Payee Code #1591 versus unassociated client codes, foreign PRO/CMO feeds, and Publisher Account #31985; and *(e)* ASCAP's continued unauthorized routing of royalties from Writer Account #1547789 and Publisher Account #31985.

132. Plaintiff seeks a formal judicial declaration establishing that: *(a)* The 2018 IRPA was lawfully terminated, rescinded, and rendered void because MRCI failed to satisfy the mandatory condition precedent of paying the full $84,000.00 purchase price under Section 3(c)—specifically defaulting on the purchase price by short-funding the transaction by $1,756.00 (including the $878.00 unauthorized advance deduction under Invoice No. ROY11331)—and failed to cure the default

within thc mandatory fivc-day curc pcriod following writtcn noticc; *(b)* All prc-closing assignment and loan documents executed in the name of UPIP are legally void due to prior corporate dissolution and lack of loan funding (Exhibits J, Exhibit TT); *(c)* Universal Master Account No. 5137148025, associated multi-territory foreign PRO/CMO feeds, and ASCAP Publisher Account #31985 were never encompassed within the transaction and remain Plaintiff's exclusive property; *(d)* ASCAP's continued routing of royalties to MRCI after receiving written notice of loan non-funding and contract termination violates its administrative duties; *(e)* ASCAP's use of a litigation standstill hold under Compendium Section 2.8.1 to permanently divert post-2022 distributions without verifying contract compliance constitutes an administrative breach; and *(f)* All future royalty routing to MRCI across all affected accounts must cease immediately, and all wrongfully intercepted funds must be fully restored and disgorged to Plaintiff, together with pre- and post-judgment interest and proper equitable relief.

## <u>COUNT V</u>

**Equitable Accounting, Sinking-Fund Ledger Disgorgement, and Statutory /Common-Law Conversion Under Article III Equity Jurisdiction, Federal Judicial Code (28 U.S.C. §§ 1331, 1367), Federal Rules of Civil Procedure (Rules 1, 2, and 54), and O.C.G.A. § 51-13-1 et seq.**

*(Against Defendants Universal Music Group, Inc., UMPG, and Music Royalty Consulting, Inc.)*

133. Plaintiff realleges and incorporates by reference the factual allegations set forth in Paragraphs 94 through 99 (portal lockouts, container routing, and siphoning) and Paragraphs 104 through 111 (financial architecture, breakout totals, and ledger distinctions) as if fully set forth herein.

134. This claim is brought pursuant to the inherent equity jurisdiction of the federal courts under Article III, Section 2 of the United States Constitution, federal question and supplemental jurisdiction under 28 U.S.C. §§ 1331 and 1367, the remedial framework of Federal Rules of Civil Procedure 1, 2, and 54, and statutory and common-law conversion under O.C.G.A. § 51-13-1 et seq.

135. From August 23, 2018 to March 2026, there was an active document concealment, multi-year portal lockouts, multi-territory statement container abuses (Payee Code #1591), (Exhibit R) and complex feeder routing render legal remedies inadequate to ascertain exact sums wrongfully withheld, equity compels a full accounting and complete ledger disgorgement co-extensive with Defendants' tortious conversion of Plaintiff's exclusive property rights.

136. Legal remedies are entirely inadequate because Defendants actively concealed the countersigned IRPA, blocked Plaintiff's access to the UMPG Royalty Window portal until March 2026, improperly treated localized

Statcmcnt Paycc Codc #1591 as a blankct catalog assignmcnt cncompassing standalone client codes (EP4Y, B75T, B75U) and foreign PRO/CMO feeds (APRA/AMCOS, ZAMP, KODA, SOCAN, SAYCO), and funneled unassigned revenues from ASCAP Publisher Account #31985 into unauthorized channels, resulting in diverted pipeline receipts exceeding $604,625.09 of $682,869.73 total processed that cannot be fully reconciled without a court-ordered accounting.

137. Furthermore, Defendants intentionally and without authorization exercised wrongful dominion, control, and ownership over Plaintiff's copyrighted catalog and corresponding royalty streams by intercepting, siphoning, and redirecting her funds through unauthorized feeder codes. (Exhibit Z) This tortious conversion was actively concealed through opaque reporting statements bearing legacy or defunct corporate names, remaining undiscovered by Plaintiff until revealed through structured due diligence and record analysis within the limitations period in 2026.

138. Plaintiff seeks a formal equitable order and judgment: *(a)* Compelling Defendants UMG/UMPG and MRCI to provide a comprehensive, itemized forensic accounting and complete sinking-fund ledger disgorgement of all monies collected, withheld, cross-routed, or paid out across Universal Master Account No. 5137148025, associated client/feeder codes, foreign PRO/CMO

incomc fccds, ASCAP Publishcr Account #31985, and MRCI distributions from August 2018 through the continuous 2026 distribution cycles; *(b)* Awarding full compensatory damages for tortious conversion under O.C.G.A. § 51-13-1 et seq.; and *(c)* Granting pre- and post-judgment interest and proper equitable relief.

## COUNT VI

Permanent Injunctive Relief and Administrative Compliance Under Article III Equity Powers, All Writs Act (28 U.S.C. § 1651), and Federal Rule of Civil Procedure 65 *(Against Defendants ASCAP, UMG, UMPG, and MRCI)*

139. Plaintiff realleges and incorporates by reference the factual allegations set forth in Paragraphs 91 through 93 and 100 through 103 (ASCAP loan notices and routing) and Paragraphs 94 through 99 and 104 through 111 (ongoing distribution cycles, portal controls, and container routing) as if fully set forth herein.

140. This claim for permanent injunctive relief is brought pursuant to Article III equity powers, the All Writs Act (28 U.S.C. § 1651), Federal Rule of Civil Procedure 65, and traditional equitable doctrines to prevent ongoing, irreparable administrative harm, unauthorized routing, and continuous post-termination conversion where legal remedies are inadequate.

141. Dcfcndants continuc to maintain unauthorizcd administrativc routing, void assignment instruments (executed by dissolved entity UPIP), unconsummated loan directives (on ASCAP Writer Account #1547789), and third-party payment flags in their internal accounting systems and portals despite valid contract termination, formal written notice, and UMPG's administrative confirmation that no third party holds independent authority over Plaintiff's account.

142. Plaintiff has suffered and will continue to suffer irreparable harm because each distribution cycle constitutes an independent act of conversion, internal portal flags remain actively configured to direct revenues away from Plaintiff, and ongoing reliance on void instruments damages foundational copyright and publishing interests that monetary damages alone cannot remedy.

143. Plaintiff seeks a permanent injunction ordering ASCAP, UMG, UMPG, and MRCI to: *(a)* Immediately remove and permanently delete all unauthorized third-party payment flags, routing instructions, and assignment directives associated with Writer Account #1547789, Publisher Account #31985, Master Account No. 5137148025, Statement Payee Code #1591, and associated client/feeder codes (EP4Y, B75T, B75U, TFEP4Y); *(b)* Update all internal registries to reflect Plaintiff as the sole authorized recipient of all catalog royalties; *(c)* Fully restore direct, unencumbered administrative and portal

control (including UMPG Royalty Window acccss) cxclusivcly to Plaintiff; *(d)* Cease all further routing or diversion of royalties to MRCI or any affiliated third party; *(e)* Provide written confirmation of compliance within thirty days; and *(f)* Submit to appropriate periodic compliance reporting.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Terri Vanessa Lowe respectfully requests that this Court enter judgment in her favor and against Defendants Music Royalty Consulting, Inc. ("MRCI"), Universal Music Group, Inc. ("UMG"), Universal Music Publishing Group ("UMPG"), and the American Society of Composers, Authors and Publishers ("ASCAP"), and grant the following relief:

1. Declaratory Judgment: Enter a formal declaratory judgment under 28 U.S.C. §§ 2201–2202 declaring that:

   (a) The 2018 IRPA was lawfully terminated, rescinded, and rendered void due to MRCI's failure of consideration and unfulfilled conditions precedent;

   (b) All pre-closing assignment and loan documents executed in the name of Universal-Polygram International Publishing, Inc. are legally void *ab initio* due to corporate dissolution; and

(c) Universal Master Account No. 5137148025, associated multi-territory foreign PRO/CMO feeds, and ASCAP Publisher Account #31985 remain the exclusive property of Plaintiff, unencumbered by any valid assignment.

2. Damages and Monetary Relief: Award compensatory damages, statutory conversion damages, restitution, and disgorgement against Defendants (jointly and severally where applicable) co-extensive with all wrongfully diverted revenues, uncompleted consideration, and unauthorized collections across all affected accounts through the 2026 distribution cycles.

3. Statutory and Punitive Bad-Faith Damages: Award statutory bad-faith damages, litigation expenses, and attorney's fees pursuant to O.C.G.A. § 13-6-11, alongside punitive damages against Defendant MRCI for fraud and bad faith.

4. Equitable Accounting and Disgorgement: Order Defendants UMG, UMPG, and MRCI to provide a comprehensive, itemized forensic accounting and complete sinking-fund ledger disgorgement of all monies collected, withheld, cross-routed, or paid out under Master Account No. 5137148025 and associated client/feeder codes from August 2018 through the 2026 distribution cycles.

5. Permanent Injunctive Relief: Issue a permanent injunction pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 1651 ordering all Defendants to:

   (a) Immediately remove and permanently delete all unauthorized third-party payment flags, routing instructions, and assignment directives associated with Plaintiff's writer, publisher, and master accounts;

   (b) Update all internal registries and distribution databases to reflect Plaintiff as the sole authorized recipient of all catalog royalties;

   (c) Fully restore direct, unencumbered administrative, collection, and portal control (including UMPG Royalty Window access) exclusively to Plaintiff; and

   (d) Provide written confirmation of compliance within thirty days of the Court's order.

6. Interest and Costs: Award statutory pre- and post-judgment interest, court costs, and all such other and further relief as this Court deems just, equitable, and proper.

Dated: October 2, 2026,

/s/Terri V. Lowe
Pro Se Plaintiff
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com

## VII. RULE 11 CERTIFICATION

I, Terri V. Lowe hereby certify, pursuant to Rule 11 of the Federal Rules of Civil Procedure, that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the foregoing notice and all supporting documents are well grounded in fact and are warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law; that the motion is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and that the factual contentions have evidentiary support.

## VIII. LOCAL RULE 7.1(D) CERTIFICATION

Pursuant to Local Rule 7.1(D), N.D. Ga., I hereby certify that the foregoing document has been prepared in accordance with the font and point selections approved by the Court in Local Rule 5.1(C), specifically using Times New Roman (14 point).

Dated: October 2, 2026,

/s/Terri V. Lowe
Pro Se Plaintiff
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com

## IX. PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 15(A)(1)(B)

I, Terri V. Lowe, declare under penalty of perjury as follows:

1. I am the Plaintiff in the above-captioned civil action, proceeding *pro se*. I make this Declaration based upon my own personal knowledge, and if called as a witness, I could and would testify competently to the facts stated herein.

2. I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: October 2, 2026,

/s/Terri V. Lowe
Pro Se Plaintiff
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com

## X. CERTIFICATE OF SERVICE

I, Terri V. Lowe hereby certify that on October 2, 2026, I served a copy of the foregoing Plaintiff's First Amended Complaint Pursuant to Rule 15(a)(1)(b) Pursuant to Federal Rule of Civil Procedure 5(b)(2)(E) upon counsel of record by email pursuant to as follows:

**Defendants Attorneys:**

**Kevin A. Maxim, Esq.**
The Maxim Law Firm, P.C.
1718 Peachtree St., NW, Suite 599
Atlanta, GA 30309
kmaxim@maximlawfirm.com

**Vernon M. Strickland, Esq.**
Strickland Debrow LLP
246 Bowlesboro Drive, Suite A
Newnan, GA 30263
Email: vstrickland@stricklanddebrow.com

**Stephen Paul Dunn**
Bodman, PLC
1901 St. Antoine Street
6th Floor
Detroit, MI 48226
Tel.: 248-743-6000
Email: SDunn@bodmanlaw.com

**Marshall D. Long**
Smith, Gambrell & Russell, LLP
1105 West Peachtree Street N.E.,
Suite 1000
Atlanta, Georgia 30309
Telephone: 404-815-3500
Email: mlong@sgrlaw.com

**Colin Đặng Delaney**
Smith, Gambrell & Russell, LLP
1105 West Peachtree Street N.E., Suite 1000
Atlanta, Georgia 30309
Telephone: 404-815-3500
Email: cdelaney@sgrlaw.com

**Richard Reimer**
Lead Attorney
VP Legal Services for ASCAP
250 W. 57th Street
New York, NY 10107
Rreimer@ascap.com

Dated: October 2, 2026,

Respectfully submitted,

/s/Terri V. Lowe
Pro Se Plaintiff
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com